IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        )
                                )   Criminal Action
                                )   No. 2007-CR-00011
         vs.                    )
                                )
DAVID NOE                       )
                                )
         Defendant,             )

                        *    *    *

APPEARANCES:

        JOHN M. GALLAGHER, ESQUIRE
        Assistant United States Attorney
             On behalf of the United States of America

        BENJAMIN B. COOPER, ESQUIRE
        Assistant Federal Defender
             On behalf of Defendant

                        *    *    *

                M E M O R A N D U M   O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        This matter is before the court on the Motion to

Suppress Physical Evidence and accompanying Memorandum of Law

filed by defendant David Noe on October 25, 2007.  The

Government's Omnibus Opposition to Defendant's Pre-trial Motions

was filed on October 31, 2007.  On November 9, 2007 I conducted a

hearing and closing arguments on defendant's motion to suppress

and took the matter under advisement.

        On November 21, 2007 in open court, in the presence of

counsel and defendant, I dictated an Order denying the Motion to

Suppress Physical Evidence.  I now articulate the reasons for my
decision pursuant to Rule 3.1 of the Rules of the United States
Court of Appeals for the Third Circuit.

<u>PROCEDURAL HISTORY</u>

On January 9, 2007 a one-count sealed Indictment was
filed charging defendant with felon in possession of a firearm in
violation of 18 U.S.C. § 922(g)(1).  On September 4, 2007
defendant David Noe made his initial appearance and was arraigned
before United States Magistrate Judge Henry S. Perkin.

Defendant filed four separate pre-trial motions on
October 25, 2007.[1]  By three separate Orders dictated November 9,
2007, I disposed of three of defendant's pre-trial motions and
placed the reasons for those decisions on the record.[2]

On November 9, 2007 I conducted a hearing on
defendant's Motion to Suppress Physical Evidence.  Testimony was
presented from one government witness and one defense

---

[1]      Defendant's filings included the following four pre-trial motions:
(1) Motion for Early Disclosure of Material Under 18 U.S.C. § 3500(B);
(2) Motion in Limine for Order on Government to Give Timely Written Notice of
Intention to Present Rule 404(b) Evidence; (3) Defendant's Motion to Dismiss
the Indictment for Lack of Federal Subject Matter Jurisdiction; and (4) Motion
to Suppress Physical Evidence.

[2]      Motions (1) and (2) were each dismissed as moot by agreement of
the parties.  Motion (3) was denied for the reasons articulated on the record.
Notes of Testimony of the Pretrial Motion Hearing held November 9, 2007
("N.T."), at pages 14-18.

witness.[3]  In addition, defendant introduced one exhibit into

evidence at the hearing.[4]

FACTS

Based upon the pleadings, the testimony of the

witnesses and defense exhibit presented at the hearing conducted

November 9, 2007, and based upon my credibility determinations, I

find the following to be the pertinent facts.

In April 2006 Special Agent Kevin Curry of the United

States Department of Justice, Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") was advised about multiple

firearms purchases by Kimberly Williams.  At the time, Miss

Williams was defendant's live-in girlfriend.  The ATF is notified

by multiple sales forms when a person acquires two or more

firearms within five business days.

Special Agent Curry had been informed that Miss

Williams had acquired several firearms within a short period of

time.  Specifically, she had purchased eight firearms, seven of

which were bought within a one-to-two-month time frame.

Therefore, Agent Curry decided to investigate further.

---

[3]    The government presented the testimony of Special Agent Kevin B.
Curry of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  Defendant
offered the testimony of his former girlfriend Kimberly Williams.

[4]    Defense Exhibit 1 was a form dated September 25, 2001 and entitled
Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms[-]Firearms
Transaction Record Part I- Over-the-Counter (ATF Form 4473). N.T. 36, 93-94.

-3-

The firearms records in the possession of Agent Curry indicated that Miss Williams listed her address as 1206 West Broad Street, Bethlehem, Pennsylvania.  A further records check indicated that defendant David Noe was listed as living at the same residence and that he had a prior felony conviction.

On April 6, 2006 Special Agent Curry and Special Agent Neil Zubaty of the ATF went to an Exxon gas station where Miss Williams worked.  The gas station is located at 1125 West Broad Street, which is across the street from the residence.

Upon arriving at the Exxon station, the agents asked for Miss Williams.  They were advised by a cashier that Miss Williams would be coming to work soon.  The cashier then called Miss Williams and told her that there were two police officers at the store waiting to talk to her.  Miss Williams then got dressed and walked across the street to the gas station to speak with the agents.

When Miss Williams arrived in the parking lot of the gas station, the agents identified themselves, and asked to speak with her.  They spoke to Miss Williams for a few minutes in the parking lot and explained that they were investigating her purchase of a number of firearms.  They asked to see the firearms in order to verify that she was in fact in possession of all of the guns which she had purchased.  Miss Williams agreed to show the agents that she still retained all of the firearms.

-4-

The agents asked Miss Williams if they could enter her residence to look at the guns.  Miss Williams responded that she did not want anyone coming into her house because it was not clean.  However, she offered to bring the weapons out to them. Miss Williams said that she needed half-an-hour and that the agents should call her.

Sometime thereafter, the agents called Miss Williams. She indicated that it was all right to come over.  When the agents arrived, she met them outside on the porch of her residence.  The porch is a wooden structure, with approximately four to five steps, a railing and a door which leads into the house.  The porch is not enclosed, but is attached to the home.

Miss Williams met the officers on the porch with some of the firearms.  She brought the weapons out of the house a few at a time.  The agents checked the serial numbers.  Then Miss Williams took the guns back into the house and retrieved others. She showed the agents the eight firearms which she had purchased, as well as three additional firearms which she said belonged to defendant David Noe.

Miss Williams stated to the ATF agents that all of the firearms were kept in a bedroom closet which she and the defendant shared.  She further explained that Mr. Noe knew about the purchase of the firearms and had helped to clean the guns.

After inspecting all of the firearms, the ATF agents explained to Miss Williams that they were taking all of the firearms into their custody because Mr. Noe had a prior felony conviction and had access to all of the firearms.  Miss Williams turned all of the weapons over to the agents, who gave Miss Williams a receipt for them.

Miss Williams testified that she was nervous during her encounter with Agents Curry and Zubaty.  However, she further testified that she was always nervous when talking with law enforcement officials, even in work situations while she acted as the assistant manager at the gas station.  Moreover, Miss Williams stated that she felt that she was cooperating with the agents by permitting them to examine the guns and ultimately to seize them.

On April 7, 2006, Agent Curry received a phone call from Mr. Noe inquiring about the firearms.  Mr. Noe stated that the eight guns were owned by Miss Williams and that the other three were his.  He said that he wanted to meet with agents Curry and Zubaty to explain things at another date and time.

On April 18, 2006, defendant was interviewed at the Bethlehem Police Department by ATF Agents Curry and Zubaty. Mr. Noe's counsel, Brian Collins, Esquire, was present. Defendant admitted that he had purchased the three firearms on three different dates between approximately June 2005 and March

2006.  He said that two of the guns were bought from unknown individuals whom defendant met on the internet.  The third gun was bought from another unidentified individual whom defendant met at a gun show or flea Market.

Defendant further stated that on September 25, 2001 he attempted to purchase a firearm from the Army/Navy store, a federal firearms licensee located in Whitehall, Pennsylvania.  At the time of the attempted purchase, defendant was denied permission to complete the sale because of his prior misdemeanor conviction in the Commonwealth of Pennsylvania.

Defendant also admitted to Agents Curry and Zubati that because he had been denied purchase of a firearm from a licensed dealer, he decided to purchase firearms through other means.

On August 29, 2007 defendant was arrested on this Indictment.

CONTENTIONS

Defendant's Contentions

Defendant seeks to suppress the firearms seized by the ATF agents on April 6, 2006.  He disputes that Miss Williams gave voluntary consent to retrieve firearms from the house and give them to ATF agents.  In addition, Mr. Noe contends that the ATF agents violated his rights by obtaining an invalid consent from a third party to seize his firearms.

Specifically, defendant alleges that Miss Williams was coerced into retrieving the guns by the ATF agents who told her that they were going to come in the house to verify what she was saying.  Finally, relying on the decision of the United States Supreme Court in Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), defendant asserts that the issue of consent is for the court to decide.

Government's Contentions

Initially, the government contends that defendant has no standing to challenge the voluntary disclosure by Miss Williams that he possessed and maintained firearms in their shared closet.  Moreover, the government asserts that because Agents Curry and Zubaty never entered the house, there was no search to contest.

Furthermore, the government argues that even if defendant had standing to contest the seizure, Miss Williams had the authority to provide the agents with the firearms which were illegally present in her home.  Finally, the government relies on the Supreme Court decision in Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) for the proposition that once Miss Williams advised Agents Curry and Zubaty that defendant possessed firearms within the home, the discovery and seizure of those firearms became inevitable.  Thus, they should not be suppressed.

For the following reasons, I agree in part with the government and in part with defendant.  I conclude that the weapons seized on April 6, 2006 should not be suppressed.

### DISCUSSION

#### Standing

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...."  As noted above, the government contends that defendant does not have standing to contest the seizure by Agents Curry and Zubaty of weapons which were located in his bedroom closet prior to being turned over to the ATF agents by his live-in girlfriend Miss Williams.  I disagree.

It is settled law that if the police illegally enter a home and search it, the owner, tenant or any long-term guests may suppress evidence found during the search.  United States v. Mosley, 454 F.3d 249259 (3d Cir. 2006).  However, short-term guests face the full evidentiary weight of any discovered evidence.  Minnesota v. Olsen, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).  As stated by United States Supreme Court Justice Anthony M. Kennedy, "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people."  Minnesota v. Carter, 525 U.S. 83, 99,

119 S.Ct. 469, 478, 142 L.Ed.2d 373, 386 (1998)(Kennedy, J., concurring).

In this case, however, there was no search of defendant's home by ATF agents Curry and Zubaty.  Rather, Miss Williams voluntarily brought the weapons from inside the home outside for the agents' inspection.  Thus, I conclude that if there were any "search" for purposes of Fourth Amendment analysis, it would have been consensual.

Moreover, Agents Curry and Zubaty sought to seize the weapons, knowing that defendant as a convicted felon was prohibited from possessing them.  After inspecting the weapons, the agents asked Miss Williams if they could seize them.  The agents learned from Miss Williams that the firearms were kept in a bedroom closet to which defendant had access, and that defendant's own firearms were stored with Miss Williams' firearms.

This information, combined with the agents' prior knowledge that defendant was a convicted felon and prohibited by law from possessing firearms, led to the agents' request to seize all of the weapons in the house.  Miss Williams consented to their request.  Thus, in this case, there was no search of the home, but there was a seizure.

Accordingly, because the firearms were originally located in defendant's home, specifically in the bedroom closet

he shared with Miss Williams, and because of the special protection which the Fourth Amendment provides regarding seizures from the home, I conclude that defendant has standing to contest whether seizure of the weapons was based upon the voluntary consent of Miss Williams as asserted by the government, or was the product of illegal law enforcement behavior as asserted by defendant.

Consent

Defendant seeks to suppress the weapons seized. Specifically, defendant contends that although Miss Williams went inside the home to retrieve the firearms and gave them to the agents on her porch, her actions were the result of coercion because the agents stated that they wanted to enter the home to "verify" what Miss Williams told them about the guns.

As noted above, defendant contends that any consent given by Miss Williams was not voluntary, and therefore, was not valid.  Furthermore, defendant concedes that a person with common authority over the premises may consent to a warrantless search, but the consent must be valid.  Thus, I must examine the testimony of the witnesses to determine whether valid consent for the seizure of the weapons was given by Miss Williams.

Law enforcement officials may conduct a warrantless search if someone with authority gives voluntary consent. Schneckloth v. Bustamonte, supra.  The concept of common

authority examines the shared use of property by persons with
joint access or control "so that it is reasonable to recognize
that any of the co-inhabitants has the right to permit inspection
in [their] own right and that others have assumed the risk that
one of their number might permit the common area to be searched."
United States v. Matlock, 415 U.S. 164, 172 n.7, 94 S.Ct. 988,
993, 39 L.Ed.2d 242, 249 (1974).

Consent can be express or implied.  United States v.
Lockett, 406 F.3d 207, 211 (3d Cir. 2005).  However, consent need
not be expressed in a particular form, but may be found from an
individual's words, actions or conduct.  United States v.
Deutsch, 987 F.2d 878, 883 (2d Cir. 1993).

Consent must be voluntary, but need not be knowing or
intelligent.  Consent may also be given unintelligently and
without knowledge of the right to refuse consent, and law
enforcement officers are not required to warn an individual of
the right to refuse consent.  Lockett, 406 F.3d at 211.

As noted above, there was no search in this case.  The
record is clear that Miss Williams refused the request of the
agents to enter her home.  However, it is equally clear that it
was Miss Williams who volunteered to bring the weapons out to the
porch so that the agents could inspect them and verify that she
was actually in possession of them.  Thus, because the agents
never entered the home and because Miss Williams volunteered,

-12-

that is, consented, to the inspection of the firearms, I conclude

that there is no Fourth Amendment violation regarding the

inspection of the weapons.

Furthermore, I conclude that there was no coercion

involved in obtaining this consent.  The agents spoke with Miss

Williams in the parking lot of the gas station.  They asked if

she would permit them go to her home and enter the house to view

the weapons.

Miss Williams did not consent to that request.

However, Miss Williams volunteered to permit the agents to

inspect the weapons on the front porch of her home, without

entering the home, after being given about half-an-hour at her

request.  The agents agreed to this procedure.

They called Miss Williams about half-an-hour later.

Miss Williams said it was all right to come over, and the agents

went across the street and met Miss Williams on the porch.  Miss

Williams brought some of the guns down, went back into the house

and brought the rest down.  It is clear that the agents never

went into the home.

Based upon these facts, I conclude both that Miss

Williams consented to the inspection of the weapons, and that

there was no search for the weapons.

Next, after inspecting the weapons brought outside by

Miss Williams, the agents realized, based upon the purchases made

by her, that there were more firearms than they were previously aware of.  Specifically, there were three additional guns. Miss Williams told the agents that those additional guns were not hers.  Rather, they were defendant's guns.

At this time, the agents told Miss Williams that they needed to seize all of the weapons because, based upon the information she had provided and the inspection of the guns, it was clear that Mr. Noe had access to, and possession of, those weapons.  They also told her that because defendant was a previously convicted felon, he was not legally permitted to possess firearms.

Miss Williams then consented to the seizure of the weapons by the agents.  She testified that she was not sure if the agents could take the guns, but she wanted to cooperate.  She was not told that she had a choice.

As noted above, it is not necessary for law enforcement officials to advise anyone about the right to refuse consent. Lockett, supra.  The consent need only be voluntary, not knowing or intelligent.  Miss Williams stated that she was nervous during the interaction with Agents Curry and Zubaty, but that she was always nervous when talking with law enforcement.

There is nothing in the record of this case to suggest that the consent given by Miss Williams was the product of any coercion, duress or improper tactics by law enforcement

-14-

personnel.  Rather, it is clear that it was the product of the freely given consent by Miss Williams.

Hence, I conclude that because Miss Williams consented to the seizure of all the firearms, there is no violation of the Fourth Amendment and no basis to grant suppression of that evidence in this case.

### Inevitable Discovery

The government contends that even if Miss Williams' consent were involuntary, defendant's motion to suppress should be denied because the ATF agents would have inevitably seized the firearms in the house shared by defendant and Miss Williams by obtaining a search warrant.  Because I conclude that Miss Williams did give her voluntary consent, it is unnecessary to address this issue.

### CONCLUSION

For the foregoing reasons, I entered the November 21, 2007 Order denying the Motion to Suppress Physical Evidence.

BY THE COURT:

/s/ JAMES KNOLL GARDNER
James Knoll Gardner
United States District Judge

September 12, 2008